

September 15, 2022

Hon. Ona T. Wang
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312
<u>Via ECF Only</u>

>    Re:    *Chowdhury v Shuvo Shahrish Engineering* 1:22-cv-01920
>           <u>*Cheeks* Approval/ *Wolinsky* Analysis</u>

Your Honor:

The parties jointly move the court for approval of their settlement of the above-referenced case that involves FLSA claims. On behalf of the Plaintiffs, we provide the following joint letter motion that has been approved by counsel for Defendants, in compliance with the Court's Order [Dkt 39], as follows:

> The letter motion must explain why the proposed settlement is fair and reasonable and should discuss, at a minimum, the following factors:
>> (1) the plaintiffs range of possible recovery;
>> (2) the extent to which "the settlement will enable the parities to avoid anticipated burdens and expenses in establishing their respective claims and defenses";
>> (3) the seriousness of the litigation risks faced by the parties;
>> (4) whether "the settlement agreement is the product of rum's-length bai·gainingbetween experienced counsel"; and
>> (5) the possibility of fraud or collusion.
>
> *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) [ ] The letter must also address whether there is a *bona fide* dispute as to the number of hours worked or the amount of compensation due and how much of the proposed settlement plaintiff's attorney shall be seeking as fees. See *Cheeks*, 796 F.3d at 202, 207.
>
> Any request for attorneys' fees must be accompanied by supporting documentation. "In this circuit, a proper fee request 'entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done.'" *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)…

<u>Narrative/ Overview</u>

The Plaintiffs, Tahmid Chowdhury and William DeGraaff worked as engineers for the Defendants, MD Shahrish Sharif Shuvo and his firm, Sharish Shuvo Engineering P.C. The crux of

9

the Plaintiffs' allegations is that they did not receive paychecks at all for several pay periods and sometimes had their paychecks bounce. [Dkt. 1, Complaint].

Plaintiffs' annual salaries were $74,000 and $92,000 (which are obviously much higher than the $7.25 per hour FLSA minimum wage rate). Their counsel computed them to be owed $14,230.77 and $26,420.78 in unpaid wages. The Plaintiffs are receiving $17,500 and $32,500 respectively, related to alleged wholly unpaid wages for 5-6 pay cycles, Thus, the settlement amounts coming to them after fees represent approximately 123% of the back wages they allege they are owed.

As an initial matter, while Plaintiffs allege that the workweeks in which the were not paid at all, the employer violated federal minimum wage standards, the amount they are receiving under the settlement more than compensates them for 100% of the full extent of all federal minimum wage, and liquidated damage computations to which they might ultimately be entitled.

On that basis there is no actual "compromise" in regard to their FLSA claims. (Plaintiffs have not alleged any overtime claims.) Some courts have held that the pre-Cheeks foundational Supreme Court cases such as *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) do not require approval. Of course, it would seem that the court would need to be able to assess the facts of the case in order to assess whether there was or was not a compromise. Thus, in Plaintiffs' counsel's opinion, the best course of action is indeed to receive the information and if it indeed shows that the Plaintiffs are receiving at or above 100% their maximum full "best day in court" FLSA minimum wage and (if there are any) overtime claims, and liquidated damages (and that no prohibited terms are included), then the Court should approve the settlement not as a "fair and reasonable compromise of a *bona fide* dispute" but rather should approve it as *full satisfaction* of all FLSA claims.

In addition to being far in excess of their "best day in court" FLSA minimum wage claims (including full liquidated damages) they are also receiving a "fair and reasonable" amount in relations to the entirety of their claims as alleged in the Complaint.

## *CHEEKS* ANALYSIS

In *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), the Second Circuit articulated that its rationale for requiring approval is premised largely on the notion that "Low wage Plaintiffs, even when represented in the context of a pending lawsuit, often face extenuating economic and social circumstances and lack equal bargaining power; therefore, they are more susceptible to coercion or more likely to accept unreasonable, discounted settlement offers quickly." *Cheeks*, at *17. The Court referred to a number of district court decisions rejecting proposed FLSA settlements containing the following types of provisions:

1. Highly restrictive confidentiality provisions
2. Overbroad releases
3. Attorneys' fees between 40%-43.6% of the total settlement payment
4. Restriction on a plaintiff's attorney not to "represent any person bringing similar claims against Defendants."
5. Economic desperation of the plaintiffs taken advantage of.

10

*Cheeks*, at \*17.   Here, none of these factors would preclude approval of this settlement. Preliminarily, Plaintiffs were not "low wage" workers as contemplated in *Cheeks*.   However, because the FLSA does not only apply to "low wage" workers, we address the remainder of the issues raised therein.   First, there is no confidentiality provision in the Agreement.   Second, the release in this case is limited to the claims raised in the filed action.   Third, the litigation costs are and the attorney fees combined are $15,000, i.e. about 23% of the recovery (which is less than the one third amount that is standard in this district, is less than the "lodestar" figures appearing in counsel's billing records, and both of which are less than the amounts to which both Plaintiffs agreed in their  retainer agreements with their counsel.   Fourth, the Agreement contains no restriction on Plaintiffs' counsel's ability to represent other individuals.   Fifth, the settlement was not entered into on the basis of Plaintiffs' economic desperation.   It is a significant amount of money, not the small amounts at issue in the cases cited; and the Plaintiffs, who are highly educated professional engineers, are not  "low wage" (overly vulnerable) workers.

<ins>WOLINSKY FACTORS</ins>
*Plaintiffs' Range of Possible Recovery; Disputes of Fact & Practicalities*
As described above, this is a relatively straight-forward case: total nonpayment for several pay periods. Defendants' primary responses and defenses are a) that their current financial situation was at the time of the Plaintiffs' employment, and still remains, precarious and b) that there are disputes as to whether Plaintiffs were in fact working full time during the periods at issue.

*Extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses."*
If litigation were to continue, the parties would have to incur significant additional expenses on anticipated motions, depositions, and potentially forensic expert fees (to analyze Plaintiffs' computers and software in order to determine when they were and were not working).

*Seriousness of the Litigation Risks Faced by Parties*
Both sides face risks in this case. If Defendants' arguments were to prevail, Plaintiffs could receive nothing. If Plaintiffs' claims were to prevail, an eventual judgment could be quite large due in large part to the increase in attorney fees.

*Whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel" & Possibility of Fraud or Collusion*
These factors we hope should not be in question. Both sides are represented by counsel. Plaintiff's counsel regularly represents employees in wage disputes and defense counsel regularly represents employers in employment disputes. The attorneys' firms have been collegial opposing counsels in previous matters but otherwise have no relationship with one another. All negotiations have been above board and at arms-length.

*FLSA Factors Weighing Against Approval*
- Factor (1) "the presence of other employees situated similarly to the claimant";
- Factor (2) "a likelihood that the claimant's circumstance will recur";

11

- Factor (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region";
- Factor (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace...."

This was not filed as a putative class or collective action. Counsel have no knowledge of any other lawsuits that have been brought against this employer. As this is a relatively small employer and the issues are not complicated, there does not appear to be anything particularly useful in regard to the development of the law in relation to this case. On balance we do not believe that any of these factors tip the scales against approval of the settlement.

PROCEDURE

The parties jointly ask that the Court approve the settlement and close the case but provide leave to reopen the case in the event of nonpayment, for the limited purpose of entering the confession of judgment discussed in the agreement.

 Thank you for your consideration of these matters.

Sincerely,

Penn Dodson, Esq.
*penn@andersondodson.com*

Attachments
- Exhibit A (settlement agreement)
- Exhibit C (Plaintiff's retainer agreement with his counsel)
- Exhibit D (counsel's contemporaneous activity logs)
- Exhibit E (litigation costs)

12